Good morning, Your Honors. I'd like to leave two minutes for rebuttal. My name is Edward Fitzhugh. I represent Joe and Ana Ramirez, and by and through them, their son, Jose Ramirez. Could you pull the microphone just a little bit closer to you? That's pretty much a fact-heavy issue, Your Honor. The issues in this matter are whether an expert was necessary to resolve what plaintiffs consider a factual dispute, and did the plaintiffs' complaint adequately allege violations of 1942 U.S. Constitution? I see 1983, a violation of Jose's constitutionally protected rights. It's a very unfortunate incident. Your client's child was a special needs child, correct? That's correct, Your Honor. Assaulted in the locker room? That's correct, Your Honor. Doesn't the case turn on the existence of a duty to continuously supervise? Your Honor, as the school district stated, and as you're right, they said our policy practice is continual supervision, and the facts, Your Honor, is that the testimony from the three boys who were the perpetrators and the victim is that nobody was there to supervise. Nobody was present during the assault. But does customary practice, the fact that the school district has that policy for itself, does that define duty as a matter of Arizona law? Well, the duty would be under Arizona law, it would be duty of reasonable care, and then it would be duty dependent upon the circumstances, the danger perceived. And as we detailed in the pleadings, or in the brief, that not only was it the school district that had a duty of care, my client has Down syndrome and these other boys were also mentally and physically handicapped, and then added to that was that one of these boys had a history of violence and that he had been suspended three times in the recent past for assault on students. So that is the standard, that is the danger perceived under Arizona law. But the issue is a very – the Arizona law issue is very narrow, which is whether you need to have an expert. And isn't the Howard case basically directly on point with regard to the need for an expert for, where you're claiming a heightened or unusual standard of duty that lay people wouldn't necessarily know about? Well, it's a plaintiff's or appellant's position that it isn't, Your Honor, because there's also the standard of, is an expert necessary to give testimony to aid the jury in its resolution of the issues? But what the – Carrot was essentially the same case, except in a juvenile facility, right? And the whole thing was that they did have to have an expert to – because people in general wouldn't know what's an appropriate level of supervision in a juvenile facility, right? Is that what the case said? Yes, Your Honor. And so why doesn't it just translate almost in hyperbole to this one? Well, the issue – we weren't claiming that the school district had an inadequate policy. Well, then you lose on your 1983 rights, right? No. We're saying that the practice or policy of constant supervision, okay, that's what they claimed to be their practice or policy. Was that – That goes wrong in two different ways. First, if you don't complain about the school district's policy, doesn't that, as Judge Berzon just asked, mean you don't have a 1983 claim? Your Honor, it would be that the practice was deficient, and it could also – Stop. You understand, under Minnell, to have a 1983 claim against a governmental entity, that you have to find a policy, a custom, a decision-maker, a policymaker there. And it sounds to me like you have no beef with the policy. And so where's your – where's your Minnell claim? Well, it was a stated practice. They did not have a written policy. Now, related to this is – And that's where you go wrong the second time, because I still don't know where the duty of care comes from. The fact that a school district has a policy doesn't create that as a legal duty of care, because a policy may be super cautious, and the law does not translate a super cautious policy into a legal duty. So you're suggesting your duty of care rests on the school district's policy, which by itself doesn't create a duty of care. And if you have no beef with the policy, I don't see where your 1983 claim comes from. If your whole case rests upon the school district's policy being one that you like, that one of constant supervision, where's your legal cause of action? Well, it was a stated policy. How it was carried out – you know, we were never able to ascertain. As I said, they didn't have a written practice or policy. This was just a statement from one of the officials. Unfortunately, there were discovery disputes. The teacher's aide that was responsible for their supervision on that day, we – there was disputes and discovery. We had requested his – you know, a way to locate him steadily. Defendants claimed that they did not know where he was, that he had moved somewhere in California, and they had no way of contacting him. What could he have said that spoke to the legal issues? He could have said that this practice, the stated practice of constant supervision, was in fact not carried out. And how would that help your legal issue? How would that help your legal case? Well, this was a stated practice, right? I understand that. But if they didn't have to have that – I mean, I went back to Judge Clifton's question. It still doesn't establish the duty of care. It doesn't tell you what the – what the practice needed to be to meet the state duty of care, as opposed to what it was or wasn't or whether they followed or didn't follow it. They're just non-sequiturs. Well, there's also – excuse me. There is also the argument, Your Honor, that this practice or policy was carried out with complete indifference toward the dangers – But first you need to have a legal wrong. What is the legal wrong? Not following your own policy? What's the legal wrong here? Well, it was a stated policy, Your Honor. I understand that. But what is the legal wrong? What is the duty that was breached? To follow their own policies? What is it? They breached the duty of care. Their policy was – How do we know what the duty of care is? Was the duty of care that they had to have constant supervision? No. We don't have any dispute with the duty – with their stated practice of constant supervision. Your Honor, suppose they were just being overly cautious in even stating that policy. And, in fact, for these particular children, an expert would have come in and said that they were not so retarded or so difficult that they couldn't be in a locker room by themselves. Well, I think it would be common sense, Your Honor, and that a jury looking at this of special needs children, that they would need, you know, at least adequate care. I don't know whether these children were operating at a – I mean, I really can't tell from the record whether – if these kids were operating at a five-year-old level, that would be one thing. And if the kids were operating, you know, had serious learning disabilities but were otherwise, you know, intelligent, that would be another thing. And if they were operating at a 10-year-old level, that would be another thing. I mean, you have to know a lot more about these kids. I would agree with you that at some point of disability, it might be apparent. But we have no idea whether this is that level. In the pleadings, Your Honor, it is stated that Jose has the IQ of a child of 5 to 10. One of the perpetrators was legally blind. And these kind of facts, Your Honor, I don't think require an expert. An average person can sit there and say, at a minimum, at a minimum you don't leave a child that's legally blind unattended. Now, that folds into this is our attempt to locate the teacher's age. People who are legally blind live by themselves. Excuse me, Your Honor? People who are legally blind live by themselves. Well, Your Honor, I would disagree with that when you're in a context of children that have mental and physical handicaps. Also, these are actually children. I mean, in age, anyway, he wasn't. He was 20 years old, right? Yes, Your Honor, but in age, but in IQ or ability, it's different. Obviously, Ramon, we've detailed his history of violence that was placed with these other children. And who was the main attacker on Jose certainly needed supervision. And the detailed history of Ramon's conduct or violence, this is from the school district's own records. So they knew of the danger he posed. We've run into your rebuttal time. Why don't you finish this thought? I'll give you a minute or so for rebuttal. Yes, Your Honor. Well, I think I answered that question. Okay. Thank you. Counsel for the school district. Thank you, Your Honors. Good morning. I'm Steve Sparks from the Phoenix Law Firm of Sanders and Parks. I represent the appellee in this case, Glendale Union High School District. Your Honors have, I think, correctly framed the issues today. All we've done is ask questions. From our standpoint, the issues are quite simple and purely legal. The issues in our motion for summary judgment were, first, does the plaintiff need an expert witness to prove the standard of care in a case involving supervision of special needs children and hiring and training of teachers who are overseeing and supervising those children? The second issue in the case is whether or not the plaintiff met his burden of proof on the Section 1983 claim. There's a lot of talk about Monell policy with your opponent, but can't a plaintiff prove the alternative of affirmative placement in harm's way with deliberate indifference? I think that a plaintiff can argue with deliberate indifference. I have a couple of responses to that. First is these facts, can't you say that? No, you can't, Your Honor, with all due respect. First of all, the appellant's brief in this case misstates the record. There were not three separate incidents of suspension. Well, first of all, is that an alternative? I mean, isn't the Monell procedural problem, i.e., when can you sue the municipality? Yes. Or the governmental entity? And the other is a substantive standard, but it may lead to suing a person rather than suing an entity. So the entity problem is still a problem. The entity problem is still a problem. I think the issue is that you can establish the official policy through either an official proclamation by the school district, for example, or I think by a pattern of conduct eventually that leads to a sort of an unwritten policy. But there is some controversy in the record about whether this policy actually was the policy. That's correct. There is. So why isn't that enough to get beyond the Monell problem? In other words, he's saying, I mean, it's a little confusing the way the case has been set up by the plaintiff, but it isn't at all plain that they actually do have a policy of supervising the kids all the time as opposed to not supervising the kids. So why wouldn't not supervising the kids be enough to have a 1983 cause of action? Well, because, first of all, Section 1983 claims are not permitted based upon simple negligence. If you fail to adhere to a standard of care, that's not a Section 1983 claim for purposes of a municipality. You still have to establish that the entity deliberately did something, took a step, took an action, adopted a policy that infringed upon the plaintiff's constitutional rights. Could a decision not to require constant supervision, in fact, be that policy? If there were a decision to that effect, yes. But I don't think there's anything in this record that would support that kind of a conclusion. So we've established, you know, through the Monell case, it's not vicarious liability. You can't be vicariously responsible as a municipality. You also can't be responsible for simple negligence under Section 1983. So I think Your Honor's ---- Quick question about there's a John Doe, Jane Doe in the add-alls in the complaint. Yes, Your Honor. And were true names ever substituted? True names were never substituted in this action. It's a little difficult to explain procedurally. The plaintiff did move to amend his complaint at one point to name some individuals as defendants. And that motion to amend was ultimately granted. But that case has been dismissed as a result of no supplemental jurisdiction, and it's been remanded to the superior court where it currently is pending. So there is a separate lawsuit currently pending in the superior court. Against individuals? Yes. The bottom line is, Your Honors, on the Section 1983 claim, that in order to have municipal liability, there has to be a deliberate action. There has to be the public entity or the municipality or school district needs to be the moving force behind a policy that deprives the plaintiff of constitutional rights. In this case, we have neither of those two prongs. The plaintiff has never identified a policy, and the appellant has never identified any constitutional wrong that he suffered. In fact, that issue was raised in open court in Judge Silver's court, the United States District Court, and the appellant's counsel was not able to even answer the question of what constitutional right was violated. Although I think the answer given ultimately was due process. It was due process, but there was never an explanation of whether it was substantive due process or procedural due process or what the facts were that led to either of those two prongs of due process. And so I think it had to be substantive in some fashion. I mean, he's not complaining about a procedural step that was missed. I presume that's true, too, Your Honor, but that's never been argued in the case, and it was never argued in open court or, I don't think, in either of the briefs that have been filed in this case. Let me turn quickly to the issue of Let me just ask you something about the policy. There's a police department report in your record, and it seems quite clear from that report that the policy is not to have full-time supervision in the locker room because there's a discussion where they say, Annie and Homestead's teacher, Tanya, decided that the boys could not remain in the same classroom. Annie mentioned the possibility of assigning a senior student to monitor the men's locker room when the boys are in it together, but she doesn't have enough male volunteers to assist with this, but she'll work on it. She understands it's hard, if not impossible, for her current two male volunteers to monitor all sides of the locker room at all times. So that seems to be a statement that the policy is not to supervise them in the locker room at all times. I think that would be accurate, yes. So that's the policy, not to supervise them. No, that's not the policy. I think the policy Not because they don't have enough people, and so they don't have a policy of supervising them in the locker room at all times. I think it's true that they don't have a policy of supervising students at all times. I don't think I think we're talking kind of double negatives. I don't think that anybody from the school district would say, we constantly monitor these kids and mean those words. In other words, they are there most of the time. They are supervising, providing reasonable supervision for the students. But if the question is, does the coach ever go to the office to get a clipboard out of his office, I think he would say, yes, I do periodically do that. But otherwise, I'm monitoring the students, I think would be his position. But the issue in this case is not necessarily what the school district did or did not do for purposes of the negligence claim, the state law negligence claim. The issue is, what is the standard of care? And the appellant in this case has asserted a heightened standard of care, both in the complaint in response to the motion for summary judgment, and at all times in the court, the plaintiff has alleged a heightened standard of care. Couldn't you just do that as a matter of fact? In the sense, for example, that the standard of care for driving is what it is, but if conditions are adverse, if it's raining, if it's dark, then reasonable care translates factually to something different, without necessarily requiring an expert to say wet roads are slippery. And so, too, in this case, why can't plaintiffs simply allege whatever the standard of care is for schools? In this case, the factual circumstances are the school equivalent of a wet road. You've got special education kids. One of them has a history of violence. Reasonable care under the circumstances, why isn't that enough? Well, I think there's a couple reasons. First, I said the issue with regard to wet roads is something that all lay jurors are familiar with. It's a commonplace occurrence that we all deal with, and the jurors, therefore, are able to determine what is a reasonable action or a reasonable inaction when driving on a wet road. The difference here is that we're talking about special education students in the context of a public school system. The school district has an obligation to hire and train their employees. You had a kindergarten class, okay, five-year-olds. And the question is, can they go to the bathroom themselves, or does somebody have to be in the bathroom at all times? You need an expert for that. That's a good question. I don't think so. I think under Arizona law, ordinary students who are not special needs students, I believe the law would be that that's within the province of an ordinary lay juror. And that stands to reason, because the people, the parents who are sending the children to school have an understanding. And they obviously say there's a real violent little five-year-old there or something. I'm not sure I see the difference. I mean, if you knew enough about these children, which we don't on the current record, but if you did, if you had a pretty good bunch of information about these particular kids. Well, I think the difference is that in the special needs situation, you have special certifications that are required for the teachers. You have special training that is required for the special needs teachers. That is beyond anything that they ever cover with regular. But the teachers need to have certifications, too, that lay people don't have. So obviously there has to be some limit on this. That's right. But when it comes to supervision of special needs students, I think the Coward decision is right on point, as Your Honor pointed out. We cited the Powderhorn case from Arizona, the Thomas v. Boudreaux case. All of those cases deal with situations where there is something that is outside the province of the jury. But the other cases were all about things that people, really technical things that people don't know. People in their daily lives do encounter various kinds of people, including blind people and retarded people and so on, and have some understanding about them. And also if you're told that this person is functioning at an age between 5 and 10, that tells you something. So I'm not at all clear on why this is different than if you know the child is functioning between 5 and 10 and you know that one of them has a history of violence, you know that one of them is blind, why you can't extrapolate from what you do know and why you need an expert. Well, I think that's the decision in Coward, and that is right on point in our opinion. This is a situation that is, according to Coward, and my belief is that it is something that is outside the scope of what an ordinary juror would know. I know my time is up. Okay. Thank you for your argument. Thank you, Your Honors. Roberta? Thank you, Your Honor. Well, as counsel said, these are matters that the average person would know regarding mentally and physically handicapped children. The court did question or did read some of the police report, but there was a statement from the assistant principal, and that's where we got this, where she said, this couldn't have happened because our practice is that we never leave these kids unsupervised. And we take it from there is that this was the ---- But she's obviously wrong because the teacher on the scene said otherwise. Well, they contradict themselves, Your Honor. That's a question of fact, or subsequently contradict themselves. Also, Your Honor, as we've been talking and we've been detailing here, we have this situation, these mentally handicapped kids. My client has Down syndrome, severe Down syndrome, the other one that's legally blind and mentally impaired, and then the one with the history of violence. This the school district knew. Couldn't it be reasonably inferred from this on the 1983 that this was a state-created danger to my client? Their response was, we do not leave them unattended. Now, intertwined in this is that the teacher's aide responsible for these children at that time, we persistently requested the information located just prior to the hearing on the motion for summary judgment. They disclosed that, in fact, he had never moved. He would always live in Phoenix. We set his deposition. We asked the court to continue the hearing on the motion for summary judgment to take his deposition. This person was key because also there can be a constitutional violation, as the court knows, when there is inadequate training of employees. Also, this practice, this would be a key person to testify as to how this practice was effectuated. Was it not enforced or carried out so much as to establish indifference by the school district toward the safety of these children involved? Thank you. Thank you for your argument. Thank both of you for your arguments. The case just argued will be submitted for decision, and the court is going to stand in recess for about 10 minutes.
judges: Hawkins, Berzon, Clifton